Carlos **TORRES ROSADO,** Plaintiff,

v.

**UNITED STATES of America, et al, Defendants.**

No. CIV.00–2075(HL).

United States District Court, D. Puerto Rico.

Jan. 28, 2002.

Luis M. Chaves–Ghigliotty, Cabo Rojo, PR, for Carlos Torres–Rosado, plaintiff.

Fidel A. Sevillano–Del–Rio, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, Lilliam E. Mendoza–Toro, Lopez Toro, Law and Notary Offices, Hato Rey, PR, for U.S. Immigration and Naturalization Service, U.S. Border Patrol, defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff Carlos Torres Rosado ("Torres") brings this claim against Defendant the United States Department of Justice's Immigration and Naturalization Service ("INS") for employment discrimination. He alleges that the INS failed to consider Torres for a promotion due to his age in violation of the Age Discrimination in Em-

ployment Act.[1] The Court held a two-day bench trial on this matter and is now ready to rule.

## FINDINGS OF FACT

Based on all the evidence and testimony presented at trial, as well as the parties' stipulations in the pretrial order, the Court makes the following findings of fact:

1. Torres has been an employee of the INS at the Ramey Border Patrol Sector in Aguadilla, Puerto Rico since June, 1988, in the capacity of Supervisory Law Enforcement Communications Assistant ("SLECA"). Torres initially began this post at a grade level of GS–05 and was upgraded to a GS–06 in 1989. He held the GS–06 level until January, 1997.[2]

2. As a SLECA, Torres was responsible for the communications section of the Ramey Sector as well as for supervising four Law Enforcement Communications Assistants ("LECA").[3]

3. The Ramey Sector is assigned to the Eastern Region of the INS. The eastern regional office is located in Burlington, Vermont. The regional office has several departments including the classification office, which determines position classifications, and the human resources office, which performs several functions including announcing vacancies, processing applications, and filling positions.[4]

4. Prior to 1996, both the SLECA and LECA positions in Puerto Rico were not in line with the grade structure of the agency nationwide.[5]

5. In 1995, the Ramey Sector office was informed that it would be receiving a significant amount of additional resources in the form of new equipment and technology including new communications equipment in order to update the office. This influx of resources would result in the increase in duties for certain positions including the SLECA post.[6]

6. In response to the incoming resources and the lack of parity in grade levels between the SLECAs and LECAs in the U.S. and those in Puerto Rico, Chief Patrol Agent of the Ramey Sector, Gary Labbe, made a request to the human resources office and the classification office for the eastern region to review these positions and to reclassify them. To that end, management officials in the Ramey office, including Acting Chief Patrol Agent Michael Wimberly and Acting Deputy Chief Patrol Agent Randy Warrick, helped revise the SLECA position description to reflect the upcoming changes in this position's duties and responsibilities. Specifically, their revision of the SLECA position took into account the complexity of the new equipment to be used, an increase in number of employees supervised, and a wider area of responsibility for emergency operations. Ramey Sector management officials then submitted this revised description to the Human Resources Office for the Eastern Region for review.[7]

7. After reviewing the proposed revision to the SLECA position description, the classification office informed Ramey management officials that the revised SLECA position had been reclassified to

1. 29 U.S.C. § 621, *et seq.*

2. *Testimony of Carlos Torres–Rosado.*

3. Testimony of Torres.

4. Testimony of Michael Wimberly; testimony of Randy Warrick; testimony of Pat Clark.

5. Testimony of Torres; testimony of Warrick; testimony of Wimberly.

6. Testimony of Wimberly.

7. Testimony of Wimberly; testimony of Warrick; testimony of Clark.

the GS–08 and 09 level, signifying that the holder of the position would be classified at a GS–08 but would have the potential to be upgraded up to a GS–09 when eligible.[8]

8. In light of the revision and the two level increase in classification, the human resources office made the decision to announce this as a competitive position to all eligible candidates nationwide rather than awarding it to the incumbent on a non-competitive basis.[9]

9. To qualify for the upgrade to a GS–08, an employee must have served as a GS–07 for at least one year. As a GS–06, Torres would not have been eligible to compete for the revised SLECA position had it been announced as a GS–08 and 09.[10]

10. Realizing that Torres would not have qualified for the proposed SLECA position, Ramey management officials, including Acting Chief Patrol Agent Michael Wimberly and Acting Deputy Chief Patrol Agent Randy Warrick, called Pat Clark, a personnel staffing specialist in the human resources office, and requested that the position be announce at a GS–07, 08, and 09 level so that Torres, the incumbent SLECA, could have an opportunity to compete. Clark agreed and helped make arrangements for the position to be announced at the GS–07, 08, and 09 level.[11]

11. In July 1996, Torres met with several of the management officials of Ramey. During that meeting, Torres was informed that his position would have to be announced as a competitive position due to the reclassification. Torres inquired as to why he was not simply upgraded to the GS–7 without having to compete. He was told that the regional office made the decision to announce the position as competitive.[12]

12. At this time, there was a LECA GS–07 position available at the Ramey Sector. Acting Chief Deputy Warrick informed Torres at the July meeting that if his immediate concern was to be upgraded he could take over the higher grade LECA GS–07 position while he competed for the revised SLECA position. Torres would have to relinquish his SLECA post to do so. Warrick testified that one of the reasons he suggested this option was because on several occasions Torres had complained of stomach and head aches caused by stress. Warrick told Torres that taking the less stressful LECA position would more than likely help alleviate these health problems and he could still compete.[13]

13. On August 12, 1996, the revised SLECA position was announced throughout the agency at the GS–7, 8, and 9 level. The vacancy announcement delineated the position requirements and description. Also, it stated that applications had to be received by the closing date in the personnel office in Burlington, Vermont. Applications received after the closing date would not be considered. The closing date listed on the vacancy announcement was August 30, 1996.[14]

14. A week before the closing date, José Flores, an Assistant Chief Patrol

---

8. Testimony of Wimberly; testimony of Warrick; testimony of Clark.

9. Testimony of Wimberly; testimony of Warrick; testimony of Clark.

10. Testimony of Wimberly; testimony of Warrick; testimony of Clark.

11. Testimony of Wimberly; testimony of Warrick; testimony of Clark.

12. Testimony of Torres; testimony of Wimberly; testimony of Warrick; testimony of Clark.

13. Testimony of Warrick; testimony of Torres.

14. Joint exh. II.

Agent, discussed the application process with Torres. Flores asked whether Torres had submitted his application. Upon learning that Torres had not, Flores reminded Torres that his applications had to be received by the closing date of August 30, 1996 if he wanted to be considered.[15]

15. Torres, who was 56 years old at the time, picked up an application and sent it on August 29, 1996. The application Torres used stated that applications had to be postmarked by the closing date. Torres' application was, however, an old application that had last been revised in March, 1983, and was no longer in effect. The current application was one last revised in 1992 and instructed that applications had to be received by the closing date.[16]

16. Torres' application arrived in the personnel office on September 9, 1996, ten days after the closing date.[17]

17. After receiving all of the applications, the human resources office reviewed and processed them eliminating any candidate who was not qualified or who did not submit a timely application. Because of his untimely submission, Torres was eliminated as an eligible candidate. The human resources office then sent Chief Labbe a list of two eligible candidates. At which point, Chief Labbe chose Tomas Rodriguez for the revised SLECA position at the Ramey Sector.[18]

### APPLICABLE LAW

*1. Age Discrimination in Employment Act claim*

Torres claims that the INS discriminated against him because of his age.

Specifically, Torres avers that the INS should have promoted him in a noncompetitive manner. Rather, Torres alleges that the INS announced his SLECA position on an agency wide level as a competitive post in an attempt to remove him as a supervisor because of his age.

■ Usually, cases alleging age discrimination are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, once a case has been submitted to the fact-finder, the *McDonnell–Douglas* framework drops from the case. At this stage, there remains the ultimate question: whether " 'the defendant intentionally discriminated against the plaintiff.' " [19] *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)); *McGill v. Muñoz*, 203 F.3d 843, 845–46 (D.C.Cir. 2000); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 720 (1st Cir.1994). Plaintiff retains at all times the ultimate burden of persuasion on this question. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000).

■ The Court holds that Torres has not satisfied his burden. The fatal blow to

---

**15.** Testimony of José Flores.

**16.** Joint exh. IV; plaintiff's exh. 1; plaintiff's exh. 2; testimony of Torres; testimony of Clark.

**17.** Joint exh. IV; testimony of Clark.

**18.** Defendant's exh. H; Defendant's exh. I; testimony of Clark.

**19.** Even if the *McDonnell–Douglas* burden shifting were applied to this case, the INS would satisfy its burden. It has articulated a legitimate, non-discriminatory reason for its actions.

Torres' claim is his utter lack of any evidence of discriminatory animus on the part of the INS. To establish this animus, Torres first avers that he should have been promoted to the GS–7 level noncompetitively prior to 1996. To that end, Torres submitted into evidence three memos from 1991, 1993, and 1994 by Chief Gary Labbe recommending Torres for a promotion.[20] However, Torres was never promoted. The problem here is that Torres failed to present any evidence indicating the availability and existence of a SLECA GS–07 position at the Ramey Sector in those years. During that time, the SLECA position for Ramey was capped at the GS–6 level. As the evidence presented proved, decisions to reclassify positions were made by the eastern regional office in Vermont, and could not be made unilaterally by Ramey Sector management officials. Therefore, the mere fact that Chief Labbe made recommendations for Torres to be promoted do not in any way prove that Torres was denied a promotion for a discriminatory reason considering that no such position existed at these times.

■ Nevertheless, the issue in this case does not center around why Torres was not promoted prior to 1996, but rather whether the INS had an age-based reason for not considering him for the revised SLECA position once it was announced. As to this question, Torres claims that the Ramey Sector management officials decision to announce in itself was based on a discriminatory animus as he was already the incumbent, and any changes to the positions classifications should have been awarded to him on a noncompetitive basis. In response, the INS first established that all decisions to announce positions as competitive are made by the regional office in Vermont and not by the sector managers. Next, the INS presented convincing evidence that in situations where a position is significantly revised and increased three grade levels as in this case, it is agency policy that the position be announced and opened up so as to allow eligible candidates to compete. Torres adduces no evidence indicating that the regional office acted in any discriminatory manner when it decided to announce the revised SLECA position as a competitive post, and the Court sees no evidence to believe that the regional office acted improperly by following its own procedures and policies.

■ Torres next tries to draw the Court's attention to several comments and suggestions made to him during the July, 1996 meeting he had with several of his superiors. According to Torres, Acting Deputy Chief Randy Warrick informed him that his position was about to be reclassified and announced as a competitive post. Torres responded that he should be given the upgrade to GS–07 noncompetitively. To this, Warrick suggested that if Torres so desired he could accept a LECA GS–07 position while he competed for the SLECA spot. Warrick testified that he believed Torres could have benefitted from the higher salary while the applications were being processed. Warrick also made comments to the effect that the less stressful LECA position would help Torres' head and stomach aches. Torres highlights these as being age-based discriminatory comments. The Court disagrees. First, these comments do not in any way imply that Torres was not capable of handling the SLECA position because of his age. Rather these comments reflect an observation as to an employees health needs. Secondly and more importantly, there is no evidence that Warrick was involved in any manner with making either the eligibility determinations for the SLECA post

20. Plaintiff's exh. 4.

or final decision on who was ultimately chosen.

■ Returning to the issue in this case, the INS presented convincing evidence that the only reason Torres was not considered as an eligible candidate was because he failed to submit his application before the closing date as per agency policy.[21] Torres, however, counters that his application stated under its instructions that applications had to be postmarked by midnight of the closing date, and that by sending his application by August 29, 1996, he fully complied with the time requirement and should have been considered.

This argument does not help Torres for the following reasons. To begin, the INS provided evidence that Torres used an application form that was outdated and no longer in effect. The current application form clearly states that applications had to be received in the personnel office by the closing date. In fairness to all the other applicants, the regional office could not have deviated from its policy simply because one applicant made a mistake. Yet, Torres' mistake would have been more significant were it not for the fact that Torres did indeed have notice that applications were due by the closing date. First, the vacancy announcement Torres read clearly advised applicants that their applications had to be received by the closing date. Secondly, Jose Flores' unchallenged testimony clearly established that Flores had warned Torres only a week before the closing date that the applications had to be received by that time. In light of this evidence, Torres cannot claim that he was not aware of the proper instructions for submitting a timely application.

Ultimately, the human resources office deemed Torres ineligible to compete due to his untimely submission. The human resources sent a list of two eligibles to Chief Labbe, and he ultimately decided who was to be awarded the revised SLE-CA post. Torres fails to attribute any discriminatory animus to either the human resources office who made the ineligibility determination or to Labbe as the decision maker. As such, his claim must fail.

In sum, Torres fails to adduce a single shred of evidence that would indicate to this Court that the INS discriminated against him in any manner. Torres was in no way hindered, prevented, or discouraged from applying for the revised SLE-CA position by anyone in the regional office or any of his superiors at the Ramey Sector. On the contrary, the evidence clearly shows that had his superiors not requested that the position be classified as a GS–07, 08, and 09 level, Torres would not have been eligible to apply for it in the first place. The fact that Torres was not considered nor eligible to compete for the revised SLECA post can only be attributed to his own negligence in not submitting a timely application and not on some discriminatory animus on the part of the INS. Undoubtedly, Torres has made it abundantly clear that he disagrees with the internal INS policies on promotions and on the designating of positions as competitive. His complaints over agency procedures, however, are of an administrative nature that in no way implicate an age discriminatory animus.

WHEREFORE, the Court finds that Torres failed to meet his burden of proving that the INS intentionally discriminated against him due to his age.

---

**21.** The closing date for submitting applications was August 30, 1996. While their was some dispute as to whether the date had been changed to September 6, 1996, Torres ultimately failed to prove this change was actually made. Nevertheless, Torres would still have made an untimely submission as his application arrived on September 9, 1996.

Accordingly, the Court finds in favor of defendants.

**IT IS SO ORDERED.**